Honorable Marc L. Barreca
Chapter 7
Hearing Location: Seattle, Rm. 7106
Hearing Date: March 21, 2024
Hearing Time: 9:30 a.m.
Response Date: March 14, 2024

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In re:

ASSET REALTY LLC,

           Debtor.

Case No. 23-10326-MLB

**DECLARATION OF EDMUND J. WOOD**

I, Edmund J. Wood, declare under penalty of perjury as follows:

1. I am the Chapter 7 trustee appointed for debtor Asset Realty LLC ("Debtor"). I have personal knowledge of the facts stated herein and if asked to testify regarding the same would and could competently do so.

2. After my appointment, I met with Chad Storey, the managing member of the Debtor to discuss the case.

3. During my meeting, I learned about the Debtor's lead generation program, a computerized program that provides sales leads to real estate agents (the "Lead Generation Program") with the Debtor collecting a percentage of a real estate agent's commission from any real estate sale that closes as result of a lead from the Debtor's computer system (the "Accounts Receivable Commission" or plural "Accounts Receivable Commissions").

DECLARATION - 1

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

FG: 102412483.1
Case 23-10326-MLB    Doc 200    Filed 02/21/24    Ent. 02/21/24 13:04:56    Pg. 1 of 6

4. Mr. Storey advised that the Lead Generation System could result in the payment of thousands of dollars in Accounts Receivable Commissions to the estate.

5. Unfortunately, I also learned that in order to collect the Accounts Receivable Commissions I would have to monitor the Lead Generation Program and conduct outreach with each broker using the system in order to ensure that Accounts Receivable Commissions are actually paid to the bankruptcy estate.

6. I have neither the expertise in operating the Lead Generation Program nor the time to invest in undertaking such a monumental task to monitor the system, contact brokers using the Lead Generation Program on a daily basis, contact escrow and collect the Accounts Receivable Commissions.

7. As a result, I determined that the best course of action was to sell the Lead Generation System and the Accounts Receivable Commissions (collectively the "Property").

8. Mr. Storey is the natural buyer for the Property given that he is the only person I am aware of who knows how to operate and monitor the Lead Generation System.

9. On February 8, 2024, I again met with Mr. Storey and we negotiated a purchase price for the Property. Initially, Mr. Storey offered a 25%-75% split of the Accounts Receivable Commissions he collected.

10. I rejected this offer and proposed a 40%-60% split of the Accounts Receivable Commissions with a minimum payment of $100,000 between the time the order approving the sale is entered and December 22, 2025 (the "Minimum Payment"), which is the date when Mr. Storey advises the system should be shut down as having run its useful life (the "Termination Date").

11. In conjunction with the purchase offer, I have entered into that certain Purchase and Sale Agreement dated February 20, 2024 ("PSA") with Mr. Storey (the "Purchaser"), which contemplates that the sale will only close upon the entry of an order from this Court approving

DECLARATION - 2

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

FG: 102412483.1
Case 23-10326-MLB    Doc 200    Filed 02/21/24    Ent. 02/21/24 13:04:56    Pg. 2 of 6

and authorizing the sale free and clear of liens and claims. *See* true and correct copy of PSA attached as **Exhibit A** and incorporated herein by this reference.

12. I have built into the PSA added protections for the estate, including the grant of a security interest in and to the Property and products and proceeds therefrom and certain reporting requirements to enable me to monitor the Accounts Receivable Commissions. *See* **Ex. A** § II.2.c. and II.2.d.

13. As set forth above, the PSA was the culmination of an arm's length negotiation between the Purchaser, me, and my respective advisors, including negotiations regarding the purchase price.

14. I believe that sound business reasons support the proposed sale of the Property.

15. As mentioned above, I have no way of monitoring or collecting the Accounts Receivable Commissions on my own. As a result, without the sale of the Property, it is entirely likely that the Accounts Receivable Commissions would not be paid to the estate.

16. Accordingly, it is my position that the sale of the Property to the Purchaser maximizes the value of the asset, which would otherwise be lost without the sale.

17. The present offer will enable me to pay Chapter 7 administrative costs and make a distribution to creditors.

18. The PSA also contemplates that I will entertain alternative purchase offers through the March 14, 2024 response date. *See* **Ex. A**, § II.7. As a result, I believe the sale of the Property is fair and reasonable.

19. Specifically, any other party interested in purchasing the Property (a "Competing Purchaser") will be required to:

  i. deliver to Trustee a form of purchase agreement identical in all respects to this Agreement except that Competing Purchaser (1) will change Purchaser's name to the Competing Purchaser's name in the Agreement and;

  ii. offer a purchase price to the estate of at least $50,000 to be paid at Closing in addition to paying the estate 40% of **all** of the Accounts Receivable Commissions

DECLARATION - 3

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

FG: 102412483.1
Case 23-10326-MLB    Doc 200    Filed 02/21/24    Ent. 02/21/24 13:04:56    Pg. 3 of 6

for the period December 22, 2023 through December 22, 2025, but in no event shall the payment to the estate of 40% of **all** of the Accounts Receivable Commissions be less than the Minimum Payment.

20. The Response Date for all competing bids shall be the response date to this Motion, which is March 14, 2024.

21. I set $50,000 as the additional consideration for any Competing Purchaser because I am concerned that any Competing Purchaser who may bid on the Property will not have the expertise to operate the Lead Generation System, which could result in far less proceeds coming to the estate than what we are likely to realize in a sale to the Purchaser.

22. As a result, I believe it is appropriate to build in this additional consideration (in addition to a commitment to pay to the estate at least the Minimum Payment) to ensure that anyone bidding on the Property will truly provide value to the estate whether or not the system is utilized.

23. In the event that one or more competing offers are submitted, the Purchaser will have until March 18, 2024 at 1:00 p.m. to match or beat the competing offer.

24. If the Purchaser matches or beats the highest competing offer and the Competing Purchaser(s) wish to still compete against the Purchaser for the Property, all Competing Purchaser(s) and the Purchaser will have until 1:00 p.m. March 19, 2024, which is approximately two days before the scheduled hearing date, to submit their highest and best written offer to me on an addendum to the PSA, which I will circulate to the Purchaser and the Competing Purchaser(s).

25. The submission of the highest and best offer from each of the Purchaser and the Competing Purchaser(s) may contain an escalation clause in $5,000 increments up to the cap on their purchase offer.

26. The highest offer, based solely on the highest dollar amount, offered will be presented to the Court (the "Highest Offer") at the March 21, 2024 hearing.

DECLARATION - 4

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

FG: 102412483.1
Case 23-10326-MLB    Doc 200    Filed 02/21/24    Ent. 02/21/24 13:04:56    Pg. 4 of 6

27. Any variance from the terms and conditions of the PSA or the requirements set forth in this section will immediately disqualify a Competing Purchaser from having an offer considered.

28. I submit that the likely alternative to the proposed sale of the Property, either pursuant to the PSA or following an auction, is abandonment of the Property. As a result, it is my opinion that the Court should approve the sale of the Property to the Purchaser.

29. The purchase price reflected in the PSA represents the highest and best formal offer I have received for the Property as of the date of the filing of the motion to approve the sale.

30. I have requested that the Purchaser submit a declaration to attest to the requirements that the Purchaser is a good-faith buyer.

31. Other than as set forth in the Declaration of Chad Storey, I am not aware of any other relationship the Purchaser has with the Debtor and do believe the Purchaser is a good-faith buyer within the meaning of Section 363(m) of the Bankruptcy Code who is entitled to all of the protections thereof.

32. In addition, and as previously mentioned, the proposed sale of the Property is subject to the possibility of higher or better offers to purchase the Property until the entry of an order approving the sale thus assuring that the ultimate price that I receive for the Property will not be artificially low due to any perceived collusion between me and the Purchaser.

33. I will be sending out notice of the motion to approve the sale to the entire mailing matrix.

34. I will ensure that a declaration of mailing is filed with the Court to accurately reflect the notice provided by me to all creditors and parties in interest.

35. Thus, by submitting the PSA to the Court and serving it on parties with an interest in this bankruptcy case, I have fully disclosed the PSA and subjected the PSA to the scrutiny of the Court and other persons with an interest in this case thus ensuring that the sale of the Property is proposed in good faith.

DECLARATION - 5

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

FG: 102412483.1

Case 23-10326-MLB    Doc 200    Filed 02/21/24    Ent. 02/21/24 13:04:56    Pg. 5 of 6

36. I submit that under these circumstances, I will have provided accurate and reasonable notice of the proposed sale of the Property pursuant to the PSA giving anyone with an interest in the Property an opportunity to object.

37. Based upon my review of the pleadings filed by Century 21 Real Estate LLC in this case, it appears that there are no lien interests in or to the Property for which the Debtor has an obligation. In fact, C21 specifically disavowed any interest in the Property at it hearing on relief from stay on February 1, 2024. *See Dkt No. 196.*

38. I believe the sale of the Property free and clear of liens is authorized by the Bankruptcy Code.

39. Nevertheless, I am requesting that any liens or claims in and to the Property, if any, which arise prior to closing be transferred and attached to the proceeds of the sale in the same order and priority as such liens and claims exist against the Property, and that I be permitted to hold the net proceeds from the sale pending further order of this Court.

40. I am also asking the Court to waive the stay provisions under the Bankruptcy Code as to the sale order provided there are no objections to the sale.

41. I submit that the Court should approve the sale of the Property as set forth in the PSA.

I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Executed this 21st day of February, 2024, at Seattle, Washington.

*/s/ Edmund J. Wood*
_____
Edmund J. Wood

DECLARATION - 6

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

FG: 102412483.1
Case 23-10326-MLB    Doc 200    Filed 02/21/24    Ent. 02/21/24 13:04:56    Pg. 6 of 6