# EXHIBIT A

# PURCHASE AND SALE AGREEMENT

This Purchase and Sale Agreement (this "*Agreement*") is made effective this 20th day of February 2024, by and between EDMUND J. WOOD, TRUSTEE AS CHAPTER 7 TRUSTEE ("*Trustee*") for the bankruptcy estate of Asset Realty LLC ("*Debtor*"), in Case No. 23-10326-MLB (the "*Estate*") pending in the United States Bankruptcy Court of the Western District of Washington (the "*Bankruptcy Court*") and CHAD STOREY ("*Purchaser*").

## I. RECITALS

A. Purchaser was the managing member of Debtor, which developed a custom computer program known as the Pipeline CRM to gather, unbundle, and store real estate data in a SQL database, which could later be sorted to provide information about real property based on inputted parameters (collectively the "Lead Generation Program").

B. The Lead Generation Program evolved to become a system that generates leads for real estate agents for the identification of (i) distressed properties which may be ready to be sold; (ii) potential clients who might be motivated to sell their real property; and (iii) potential buyers of real property who have a known interest in buying real property.

C. Real estate agents were given access to the Lead Generation Program, and any sales transaction which closed as a result of a lead provided to the real estate agent from the Lead Generation Program created an account receivable commission owed to the Debtor (the "*Accounts Receivable Commission*" and if more than one Accounts Receivable Commission, the "*Accounts Receivable Commissions*").

D. The Accounts Receivable Commission payable to the Debtor equals 25% of the commission owed to the real estate agent (or in some circumstances where the lead is an old lead, 30% of the commission owed to the real estate agent is payable to the Debtor). The agreement with the real estate agents permits the Debtor to collect the Accounts Receivable Commissions directly from the escrow company closing the sale.

E. The Debtor filed Chapter 11 bankruptcy on February 22, 2023 under case number 23-10326-MLB (the "*Bankruptcy Case*") and on December 22, 2023 the Bankruptcy Case was converted to Chapter 7 at which time the Trustee was appointed.

F. The Trustee and Purchaser have now agreed to enter this Agreement to permit the Purchaser to purchase the Lead Generation Program and to pay the estate a percentage of the Accounts Receivable Commissions collected for the benefit of the bankruptcy estate.

G.  The Lead Generation Program is not accepting new real estate brokers into the program and is not being updated with new software. As a result, the Lead Generation Program will be closed down by no later than December 20, 2025.

## II. AGREEMENT

NOW, THEREFORE, in consideration of the mutual promises and obligations contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Trustee and Purchaser hereby stipulate and agree as follows:

1. **RECITALS INCORPORATED**. The recitals set forth above are incorporated herein by reference.

2. **SALE OF PROPERTY.** Trustee shall sell to Purchaser, and Purchaser shall buy from Trustee, the Lead Generation Program and the Estate's right, title and interest in and to the Accounts Receivable Commissions generated from the Lead Generation Program (collectively the "***Property***").

   a.  **Purchase Price and Manner of Payment.** The total purchase price ("***Purchase Price***") for the Property shall equal 40% of all Accounts Receivable Commissions collected by Purchaser through December 22, 2025 (the "***Termination Date***"), but in no event shall Purchaser pay to the Estate via the Accounts Receivable Commissions less than $100,000.00 by the Termination Date (the "***Minimum Payment***").

   b.  **Purchaser Price Payment**. For each sale to be closed arising from the Lead Generation Program, Purchaser shall notify the Trustee of a pending closing at the address set forth in section 6 herein within forty-eight hours of Purchaser learning of the pending closing. Once a sale has closed, Purchaser shall be responsible for picking up and delivering to the Trustee at the address set forth in section 6 herein within 24 hours of each sale closing (i) a copy of the closing statement that resulted from the Lead Generation Program and (ii) the entire associated Accounts Receivable Commission check for such sale endorsed to "Edmund J. Wood as Asset Realty LLC Trustee". The Trustee shall deposit each such Accounts Receivable Commission check in his trust account and once a check representing the Accounts Receivable Commission has cleared the Trustee's bank account, the Trustee shall deliver to the Purchaser 60% of the Accounts Receivable Commission and retain the remaining 40% for the benefit of the Estate. In no event shall each of Purchaser's portion of the Accounts Receivable Commission be delivered later than Friday of the week following the date the Accounts Receivable Commission check has cleared the Trustee's bank account.

   c.  **Security Interest**. As security for the payment and performance of this Agreement, Purchaser grants to Trustee as secured party, a security interest in the Property and any products or proceeds thereof, pursuant to the Uniform Commercial Code of the state of Washington (the "UCC"), on the terms and conditions contained herein. Purchaser authorizes Trustee to file and/or record such financing statements as

2

FG: 102420568.1

Trustee deems necessary or advisable to perfect the security interests herein granted. The security interest granted herein shall continue until the Termination Date at which time the Trustee will release the security interest in the Property by filing a UCC termination statement with the appropriate state agency in which the security interest was perfected.

    d.    **Records and Reporting**. Purchaser will maintain administrative and financial records for all pending Accounts Receivable Commissions and all Accounts Receivable Commissions collected. Specifically, on the first day of each month, Purchaser shall deliver to the Trustee and his counsel by email at the addresses listed in section 6 herein a report of Lead Generation Accounts Receivable setting forth closed sales for the prior month; (ii) the amount paid to the estate for each Lead Generation Program sale for such month; and (ii) any pending sales arising from the Lead Generation Program to be closed that may result in an Accounts Receivable Commission to be paid to the estate (collectively the "***Report***"). In the event that the first day of the month is a Saturday or Sunday, Purchaser shall deliver the Report as required herein on the next business day. The reporting requirements shall continue until the earlier of the Expiration Date or the Termination Date.

3. **CLOSING.**

　　a.　**Timing**. The closing of the purchase and sale contemplated by this Agreement for the Property (the "***Closing***") shall occur no later than five (5) days after the entry of an Order from the Bankruptcy Court (the "***Court Order***") as contemplated by section 8 herein (or such later date on which Trustee and Purchaser agree) (the "***Closing Date***").

　　b.　**Location of Closing**. The Closing shall take place remotely upon the exchange of the documentation set forth below between Trustee and Purchaser, or such other means or location as is mutually agreeable to Trustee and Purchaser.

　　c.　**Trustee's Deliveries**. On the Closing Date, Trustee shall execute and deliver to the Purchaser the following ("***Trustee's Deliveries***"):

　　　　i.　Quit Claim Bill of Sale. A quit claim Bill of Sale, in the form attached hereto as Exhibit B, conveying title to the Property to Purchaser ("***Bill of Sale***"); and

　　　　ii.　Court Order. A copy of the Court Order

　　d.　**Purchaser's Deliveries.** On the Closing Date, Purchaser shall execute and deliver to Trustee the following ("***Purchaser's Deliveries***"):

　　　　i.　Report. The first Report as required by section 2.c. herein.

4. **AS-IS.** EXCEPT AS EXPRESSLY SET FORTH HEREIN, PURCHASER ACKNOWLEDGES THAT TRUSTEE MAKES NO REPRESENTATIONS OR WARRANTIES WHATSOEVER REGARDING THE PROPERTY, INCLUDING BUT NOT LIMITED TO, REPRESENTATIONS OR WARRANTIES RELATED TO PHYSICAL CONDITION, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. PURCHASER HAS INDEPENDENTLY INSPECTED THE PROPERTY AND IS NOT RELYING ON ANY AGREEMENT, UNDERSTANDING, CONDITION, WARRANTY (INCLUDING, WITHOUT LIMITATION, WARRANTIES MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE) OR REPRESENTATIONS MADE BY TRUSTEE, OR ANY AGENT, EMPLOYEE, MEMBER, OFFICER OR PRINCIPAL OF TRUSTEE OR DEBTOR OR ANY OTHER PARTY AS TO ANY MATTERS INCLUDING, BUT NOT LIMITED TO, THE PHYSICAL CONDITION OF THE PROPERTY OR COMPLIANCE THEREOF WITH FEDERAL, STATE OR LOCAL LAWS REGARDING THE PROPERTY. PURCHASER ACKNOWLEDGES THAT NEITHER TRUSTEE OR DEBTOR (NOR ANY AGENT, MEMBER, OFFICER, EMPLOYEE OR PRINCIPAL OF TRUSTEE OR DEBTOR) HAS MADE OR SHALL BE DEEMED TO HAVE MADE ANY SUCH AGREEMENT, CONDITION, REPRESENTATION OR WARRANTY EITHER EXPRESSED OR IMPLIED. THIS SECTION SHALL SURVIVE CLOSING AND DELIVERY OF THE BILL OF SALE, AND SHALL BE DEEMED INCORPORATED BY REFERENCE AND MADE A PART OF ALL DOCUMENTS DELIVERED BY TRUSTEE TO PURCHASER IN CONNECTION WITH THE SALE OF THE PROPERTY.

5. **DEFAULT.** In the event that either party defaults in any of their respective obligations under this Agreement and such default remains uncured for a period of ten (10) days following written notice of such default, the non-defaulting party shall have the right, at its option, to terminate this Agreement or seek specific performance of the defaulting party. In any proceeding to enforce this Agreement or any term hereof, the prevailing party shall be entitled to recover its reasonable costs and attorneys' fees.

6. **NOTICES.** Any notice, request, demand, payment, election or other communication permitted or required hereunder shall be in writing and shall be deemed duly given when delivered personally, or delivered to a reputable overnight courier addressed to the party for whom it is intended at the address specified below or at such other address as either party shall notify the other, or transmitted by electronic mail to the email address specified below; and shall be deemed received by the party to whom it is directed on the date delivered if delivered personally, on the date one day after the date sent by overnight courier, or on the date the electronic mail is received.

If to Trustee:            Edmund J. Wood, Trustee
Wood & Jones, P.S.
303 N. 67th Street
Seattle, WA 98103
Phone: (206) 623-4382
Email: ewood@aol.com

| With copy to: | Deborah A. Crabbe, Esq. |
| --- | --- |
| | Foster Pepper PLLC |
| | 1111 Third Ave., Suite 3000 |
| | Seattle, WA 98101 |
| | Phone: (206) 447-5325 |
| | Email: deborah.crabbe@foster.com |
| | |
| If to Purchaser: | Chad Storey |
| | chad.storey@c21nwr.com |

7. **COURT ORDER AND SALE PROCEDURES.** The sale of the Property contemplated herein is subject to approval by the Bankruptcy Court authorizing the sale of the Property to Purchaser as provided herein, free and clear of liens and interests under 11 U.S.C. Section 363. Trustee shall set a hearing before the Bankruptcy Court on **March 21, 2024** to approve the sale of the Property to Purchaser and shall notice the hearing in accordance with federal and local bankruptcy rules to afford any individual or entity to submit a competing offer for the Property (each, a "*Competing Purchaser*") or to object to the sale. The sale procedure for a Competing Purchaser to submit a competing offer for the Property shall be as follows:

    a. **Third Party Offers**. A Competing Purchaser wishing to submit a competing offer for the Property must:

        i. deliver to Trustee a form of purchase agreement identical in all respects to this Agreement except that Competing Purchaser (1) will change Purchaser's name to the Competing Purchaser's name in the Agreement and;

        ii. offer a purchase price to the estate of at least $50,000 to be paid at Closing in addition to paying the estate 40% of **all** of the Accounts Receivable Commissions for the period December 22, 2023 through December 22, 2025, but in no event shall the payment to the estate of 40% of **all** of the Accounts Receivable Commissions be less than the Minimum Payment.

**ANY VARIANCE FROM THE REQUIREMENTS ABOVE WILL DISQUALIFY AN OFFER FROM A COMPETING PURCHASER**.

    b. **Auction**. In the event that there are competing offers for the Property received by Trustee on or before **March 14, 2024**, which satisfy the requirements above, Purchaser will have until 1:00 p.m. on March 18, 2024 to match or beat any such competing offer. If Purchaser matches or beats the competing offer, and the Competing Purchaser(s) wish to still compete against Purchaser, all Competing Purchaser(s) and Purchaser will have until 1:00 p.m. March 19, 2024, which is approximately two days before the scheduled hearing date, to submit their highest and best written offer to Trustee on an addendum to the purchase agreement, which Trustee will circulate to Purchaser and the Competing Purchaser(s). The submission of the highest and best offers will be undertaken confidentially and will

5

FG: 102420568.1

Case 23-10326-MLB    Doc 200-1    Filed 02/21/24    Ent. 02/21/24 13:04:56    Pg. 6 of 11

not be shared with Purchaser and the Competing Purchaser(s) until the highest offer has been determined, which will be based solely on the highest dollar amount offered. The submission of the highest and best offer from each of Purchaser and the Competing Purchaser(s) may contain an escalation clause in $5,000 increments up to the submitting party's cap on their purchase offer. The highest offer, based solely on the highest dollar amount offered, will be presented to the Court at the hearing.

8. **MISCELLANEOUS.**

    a. **Entire Agreement; Modification**. This Agreement constitutes the complete agreement between the parties and supersedes any prior oral or written agreements between the parties regarding the Property. There are no verbal agreements that change this Agreement and no waiver of any of its terms will be effective unless in a writing executed by the parties.

    b. **Binding Effect**. This Agreement binds and benefits the parties and their successors and assigns.

    c. **Survival**. All of the terms of this Agreement will survive and be enforceable after the Closing.

    d. **Captions**. The paragraph headings or captions appearing in this Agreement are for convenience only, are not a part of this Agreement, and are not to be considered in interpreting this Agreement.

    e. **Parties To Bear Own Fees and Costs**. The Trustee and Purchaser shall assume responsibility for the payment of their own attorneys' fees, costs, and expenses in this matter, including the negotiation of this Agreement and the legal work associated with obtaining the entry of an Order approving this Agreement by the Bankruptcy Court.

    f. **Governing Law and Venue**. This Agreement has been executed under and shall be construed in accordance with the laws of the State of Washington and the laws of the United States Bankruptcy Code. If there is any litigation or other proceeding to enforce or interpret any provision of this Agreement, jurisdiction shall be in the Bankruptcy Court.

    g. **Attorneys' Fees and Costs**. In the event of any suit, action, or arbitration to interpret or enforce the provisions of this Agreement, the prevailing party, as defined in RCW 4.84.330 shall be entitled to an award of its reasonable attorneys' fees, costs, and expenses incurred in such action or arbitration and in any appeal therefrom, in addition to all other remedies afforded the prevailing party.

h. **Representation Regarding Authority to Execute Agreement**.  The Trustee and Purchaser each represent that they have the power and authority to enter into this Agreement.

i. **Assignment**.  Purchaser may not assign this Agreement, or any rights or obligations under or relating to this Agreement, whether voluntarily, involuntarily or by operation of law, without the prior written consent of Trustee, and any such purported assignment will be void.

[Remainder of page left intentionally blank]

IN WITNESS WHEREOF, Trustee and Purchaser have executed this Agreement as of the date first written above.

**PURCHASER:**

**CHAD STOREY, individually**

_[signed] Feb 20th, 2024_
Chad Storey, individually

**TRUSTEE:**

**EDMUND J. WOOD AS TRUSTEE FOR THE BANKRUPTCY ESTATE OF ASSET REALTY LLC**

By:_____
 Edmund J. Wood as Trustee for the
 bankruptcy estate of Asset Realty LLC

8

IN WITNESS WHEREOF, Trustee and Purchaser have executed this Agreement as of the date first written above.

**PURCHASER:**

**CHAD STOREY, individually**

_____
Chad Storey, individually

**TRUSTEE:**

**EDMUND J. WOOD AS TRUSTEE FOR THE BANKRUPTCY ESTATE OF ASSET REALTY LLC**

By: *[signature]* _____
Edmund J. Wood as Trustee for the bankruptcy estate of Asset Realty LLC

# EXHIBIT A

# QUIT CLAIM BILL OF SALE