Honorable Marc L. Barreca
Chapter 7
Hearing Location: Seattle, Rm. 7106
Hearing Date: March 21, 2024
Hearing Time: 9:30 a.m.
Response Date: March 14, 2024

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In re:

ASSET REALTY LLC,

Debtor.

Case No. 23-10326-MLB

**DECLARATION OF CHAD STOREY**

I, Chad Storey, declare under penalty of perjury as follows:

1. I am the former Managing Member of debtor Asset Realty LLC. I have personal knowledge of the facts stated herein and am competent to testify to them.

2. The Debtor was a real estate brokerage located in Kirkland, Washington and franchisee of Century 21 Real Estate, LLC, a national real estate brokerage firm.

3. I formed the Debtor in 2006.

4. Prior to forming the Debtor, I developed a custom computer program known as the Pipeline CRM to gather, unbundle, and store real estate data in a SQL database, which could later be sorted to provide information about real property based on inputted parameters (collectively the "Lead Generation Program").

5. After I formed the Debtor, the Lead Generation Program became an integral business tool for the Debtor.

DECLARATION - 1

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE 206-447-4400 FAX 206-749-9700

FG: 102412143.1

Case 23-10326-MLB    Doc 201    Filed 02/21/24    Ent. 02/21/24 13:07:34    Pg. 1 of 5

6. Over the years, the Lead Generation Program evolved to become a system that generates leads for agents for the identification of (i) distressed properties, which may be ready to be sold; (ii) potential clients who might be motivated to sell their real property; and (iii) potential buyers of real property who have a known interest in buying real property.

7. Agents were given access to the Lead Generation Program and any sales transaction which closed as a result of a lead provided to the agent from the Lead Generation Program created an account receivable commission owed to the Debtor ("Accounts Receivable Commission").

8. The Accounts Receivable Commission payable to the Debtor equals 25% of the commission owed to the broker (or in some circumstances where the lead is an old lead, 30% of the commission owed to the broker is payable to the Debtor).

9. The agreement with the brokers permitted the Debtor to collect the Accounts Receivable Commissions directly from the escrow company closing the sale.

10. The Accounts Receivable Commission payable to the Debtor arising from the closing of sales generated from the Lead Generation Program run for the period beginning when the agent first accesses the system ends twenty-four months after the agent last accesses the system.

11. When the Debtor's bankruptcy case was converted to a Chapter 7 proceeding and the Debtor ceased operations, the Debtor stopped providing new agents with access to the Lead Generation System and stopped adding new leads to the system.

12. Agents who were already using the Lead Generation System could continue to do so but given that no new leads are being added to the system and given that the Debtor is no longer making software updates to the system, I have estimated that the useful life of the Lead Generation System will only last for another twenty-four months.

DECLARATION - 2

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE 206-447-4400 FAX 206-749-9700

FG: 102412143.1

Case 23-10326-MLB    Doc 201    Filed 02/21/24    Ent. 02/21/24 13:07:34    Pg. 2 of 5

13. I believe that the potential accounts receivable created by the Lead Generation System could result in hundreds of thousands of dollars to the bankruptcy estate over the next two years.

14. However, I am not aware of anyone, other than me, with the knowledge of how to operate or monitor the Lead Generation System to ensure that Accounts Receivable Commissions are actually collected.

15. Specifically, there is nothing that requires an agent who has utilized the Lead Generation System to make a payment to the Debtor unless someone is monitoring the leads and resulting sales.

16. As a result, the sales for agents using the Lead Generation System must be monitored on a daily basis to keep track of sales that are in the pipeline or closing. This is not a process that the Trustee could undertake.

17. As a result, I have made an offer to the Trustee to purchase the Lead Generation System and the Accounts Receivable Commissions (collectively the "Property"). In accordance with the offer, I have executed the Purchase and Sale Agreement ("PSA") in which I have agreed to pay to the bankruptcy estate 40% of all Accounts Receivable Commissions collected between the date of the entry of the order approving the sale and December 22, 2025, which would be the date I will shut down the Lead Generation System.

18. Again, as mentioned above, since new leads are not being added to the Lead Generation System and since the software is not being updated, the useful life of the Lead Generation System will run its course within two years hence the reason for choosing a date certain to shut down the Lead Generation System.

19. As a backstop, I have agreed that I will pay to the estate no less than $200,000 during such time period, but the amount I ultimately turn over to the Trustee could very well exceed $100,000.

DECLARATION - 3

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE 206-447-4400 FAX 206-749-9700

FG: 102412143.1

Case 23-10326-MLB    Doc 201    Filed 02/21/24    Ent. 02/21/24 13:07:34    Pg. 3 of 5

20. I am prepared to comply with the reporting requirements as set forth in the PSA to ensure that the Trustee receives all current information regarding closings of all real estate sales involving Accounts Receivable Commissions and potential sales involving Accounts Receivable Commissions.

21. It is my position that these facts evidence that the terms of the PSA were negotiated with the Trustee and his counsel in good faith and at arms' length.

22. I did not ask the Trustee or his counsel to tell me what price I should offer for the Property. In fact, the Trustee rejected my original proposal of a 25% -75% split and ultimately agreed to accept a 40%-60% split on the Accounts Receivable Commissions as the purchase price for the Property.

23. I have not engaged in a collusive manner with any person associated with the sale of the Property, and the price offered for the Property has not been controlled by any agreement with any other entity or party.

24. I made the offer for the Property based on what I believe to be a fair offer given the amount of work that I will have to undertake to collect the Accounts Receivable Commissions and given that the bankruptcy estate would likely realize no value for the Property without my purchase offer.

25. As a result, I believe I have made this purchase offer in good faith.

26. While I am an insider of the Debtor, I believe that my offer will benefit the Debtor's creditors and will not provide a benefit to any other insider of the Debtor.

27. There is no existing or ongoing business operations for the Debtor and I will not be holding myself out as a continuation of the Debtor in my collection of the Accounts Receivable Commissions.

28. Based on the facts that I have stated herein, I believe the evidence supports a finding that I will not be a mere continuation of the Debtor or the Debtor's bankruptcy estate, and I will not be holding myself out to the public as a continuation of the Debtor.

DECLARATION - 4

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE 206-447-4400 FAX 206-749-9700

FG: 102412143.1

Case 23-10326-MLB    Doc 201    Filed 02/21/24    Ent. 02/21/24 13:07:34    Pg. 4 of 5

29. Based on the facts that I have stated herein, I believe the evidence supports a finding that I will not be a successor to the Debtor or the Debtor's estate, and the sale of the Property to Forever Energy does not amount to a consolidation, merger, or de facto merger with the Debtor.

30. Based on the facts that I have stated herein, I believe the evidence supports a finding that I will be holding myself out to the public as a continuation of the Debtor.

31. I am proposing to purchase the Property, subject to the terms and conditions of the PSA, in order to earn some income for myself and to in some way do the right thing by the Debtor in terms of assisting the bankruptcy estate with the recovery of assets. As a result, I believe I meet the definition of a good-faith buyer.

32. I ask the Court to approve the sale of the Property to me as set forth in the PSA.

I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Executed on this 20th day of February, 2024, at Kirkland, Washington.

                                        */s/ Chad Storey*
                                        Chad Storey

DECLARATION - 5

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE 206-447-4400 FAX 206-749-9700

FG: 102412143.1

Case 23-10326-MLB    Doc 201    Filed 02/21/24    Ent. 02/21/24 13:07:34    Pg. 5 of 5