| | |
|---|---|
| | Honorable Marc L. Barreca<br>Chapter 7<br>Hearing Location: Seattle, Rm. 7106<br>Hearing Date: April 24, 2024<br>Hearing Time: 1:30 a.m.<br>Response Date: April 17, 2024 |

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re:<br>ASSET REALTY LLC,<br>　　　　　　　　　　Debtor. | Case No. 23-10326-MLB<br>**OBJECTION TO MOTION FOR ALLOWANCE OF ADMINSITRATIVE CLAIM** |

COMES NOW Edmund J. Wood as trustee ("Trustee") for Asset Realty LLC ("Debtor"), by and through his attorneys Foster Garvey PC and Deborah A. Crabbe, and objects to the motion ("Motion") of Century 21 Real Estate LLC ("C21") for allowance and payment of certain administrative expenses pursuant to section 503(b) of title 11 of the United States Code (the "Bankruptcy Code") as follows:

**1. There is no Evidentiary Basis to Allow the C21 Chapter 7 Administrative Claim.**

C21 asserts a Chapter 7 administrative claim against the bankruptcy estate for the sum of $11,143 based on section 7.1.1 of a Franchise Agreement dated September 24, 2015 between the Debtor and C21 ("Franchise Agreement"). Section 7.1.1. of the Franchise Agreement provides that the Debtor shall pay to C21 6% of the Debtor's "Gross Revenue" as a "Royalty Fee" during the "Term". *See Dkt No. 222,* **Ex. A** at 7, § 7.1.1.

OBJECTION  - 1

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

FG: 102563617.1

Case 23-10326-MLB   Doc 239   Filed 04/17/24   Ent. 04/17/24 15:15:00   Pg. 1 of 6

C21 has the burden of proving entitlement to an administrative expense claim. *In re DAK Indus.*, 66 F.3d 1091, 1094, (9th Cir. 1995). C21 must show by a preponderance of the evidence that the debt asserted is an administrative expense that "(1) arose from a transaction with the debtor-in-possession as opposed to the preceding entity (or, alternatively, that the claimant gave consideration to the debtor-in-possession); and (2) directly and substantially benefitted the estate." *Id.*; *see also In re Blue Circle Invs., LLC*, 2022 Bankr. LEXIS 1138, 2022 WL 1241426. The bankruptcy court has broad discretion to determine whether to grant such a claim. *In re Dant & Russell, Inc.*, 853 F.2d 700, 706 (9th Cir. 1988). In order to keep administrative costs to the estate at a minimum, the actual, necessary costs and expenses of preserving the estate under 11 U.S.C. § 503(b) are construed narrowly. *In re Palau*, 139 Bankr. 942, 944 (9th Cir. BAP. 1992), *aff'd*, 18 F.3d 746 (9th Cir. 1994).

However, C21 provides no evidence to the Court that the funds collected by the Trustee, post conversion, in the sum of $29,852.75 are in any way related to the Franchise Agreement or satisfy the requirement that the funds are "Gross Revenue" in order to trigger the royalty fee.

Moreover, the Trustee does not have information on whether the $29,852.75 on which C21 bases its $11,143.00 Chapter 7 administrative claim, *see Dkt No. 222, ¶¶ 17-18,* arises from sales as a consequence of the Franchise Agreement or as a consequence of the Debtor's custom computer program known as the Pipeline CRM. As the Court may recall, the Pipeline CRM is the program the Debtor developed which allowed the Debtor to gather, unbundle, and store real estate data in a SQL database, and which could be later sorted to provide information about real property based on inputted parameters (collectively the "Lead Generation Program"). *Dkt No. 201, ¶ 4.*

OBJECTION  - 2

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

FG: 102563617.1

Case 23-10326-MLB    Doc 239    Filed 04/17/24    Ent. 04/17/24 15:15:00    Pg. 2 of 6

The Lead Generation Program generates leads for agents for the identification of (i) distressed properties, which may be ready to be sold; (ii) potential clients who might be motivated to sell their real property; and (iii) potential buyers of real property who have a known interest in buying real property. *Dkt No. 201, , ¶ 6*. Agents were given access to the Lead Generation Program and any sales transaction which closed as a result of a lead provided to the agent from the Lead Generation Program created an account receivable commission owed to the Debtor ("Accounts Receivable Commission"). *Dkt No. 201, , ¶ 7*. The Accounts Receivable Commission payable to the Debtor equals 25% of the commission owed to the broker (or in some circumstances where the lead is an old lead, 30% of the commission owed to the broker is payable to the Debtor). *Dkt No. 201, ¶ 8*. The agreement with the brokers permits the Debtor to collect the Accounts Receivable Commissions directly from the escrow company closing the sale. *Dkt No. 201, ¶ 9*.

C21 appears to rely on a Chart that the Trustee prepared for C21 showing sums the Trustee has received to date on contracts. *See Dkt No. 222, ¶ 17,* **Ex. C**. However, there is no information in the Chart delineating whether the "contracts" arose as a result of the C21 brokerage/Franchise Agreement or whether the contracts arose as a result of the Lead Generation Program resulting in the payments to the Debtor. At this point, the Trustee does not have such information, but is endeavoring to obtain the information from the Debtor's principal, Chad Storey.[1]

Moreover, even if all of the contracts arose from the Franchise Agreement, C21 has produced no evidence to show how C21's Franchise Agreement or its claim is the result of …the

---

[1] Mr. Storey has been out of the country, which has prevented the Trustee from obtaining this information.

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

actual, necessary costs and expenses of preserving the estate…" 11 U.S.C. §503(b)(1)(A). Specifically, C21 provides no evidence of how the Franchise Agreement directly and substantially benefitted the estate after the case was converted to a Chapter 7 bankruptcy. As the Chart evidences, all but two contracts predate the date of conversion of the case. *See Dkt No. 222,* **Ex. C**. Again, the burden is on C21 to prove by a preponderance of the evidence that the Franchise Agreement, post-petition, directly and substantially benefitted the estate. There is no such evidence before the Court.

Finally, the Franchise Agreement was deemed rejected as of February 20, 2024 pursuant to 11 U.S.C. § 365(d)(1), which provides:

**(d)**
    **(1)**    In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract or lease is deemed rejected.

Here, the bankruptcy case was converted on December 22, 2023. *See Dkt No. 158.* Accordingly, the Franchise Agreement was deemed rejected sixty (60) days later on February 20, 2024.[2] As a result, any damages arising from or related to the Franchise Agreement become a pre-petition claim. See 11 U.S.C. § 365(g)(1). There is simply no evidence in the record that the alleged Chapter 7 administrative claim of C21 arose as a consequence of transactions with the Debtor under the Franchise Agreement after conversion of the case from Chapter 11 to Chapter 7 or, alternatively, that C21 provided consideration to the Debtor after conversion of the case from Chapter 11 to Chapter 7 and that the claim directly and substantially benefitted the

---

[2] C21 represents that the Franchise Agreement was terminated on February 23, 2024. *See Dkt No. 222,* ¶ 14. However, the rejection date predates February 23, 2024.

OBJECTION - 4

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

FG: 102563617.1
Case 23-10326-MLB    Doc 239    Filed 04/17/24    Ent. 04/17/24 15:15:00    Pg. 4 of 6

estate. *See DAK Indus.*, 66 F.3d at 1094 (debtor rejected Microsoft contract so Microsoft only had general unsecured, prepetition claim unless Microsoft could prove the debt outstanding on the contract arose after the petition or if Microsoft could prove it provided consideration to the debtor after the petition and that the claim directly and substantially benefitted the estate). Accordingly, C21 has, at best, a pre-petition general unsecured claim for sums it alleges are owed by the Debtor under the Franchise Agreement.

**2. The Decision to Allow Any C21 Claim, Administrative or Otherwise, is Premature**.

The Trustee previously entered into a contract with the Debtor's principal, Chad Storey, for the purchase of the Lead Generation Program for the sum of not less than $200,000. *See Dkt No. 199.*

However, on April 10, 2024, Mr. Storey advised the Trustee that he had been "very heavily warned from CENTURY21 to stay very far away from the Pipeline System"[3]. *See* Declaration of Deborah A. Crabbe, hereinafter Crabbe Dec., **Exhibit A**. As a consequence, Mr. Storey terminated the contract costing the bankruptcy estate a potential $200,000 in sales proceeds. *Id.*

Thereafter Mr. Storey communicated via text message that he had received the message about staying away from the Pipeline System from his counsel who had been advised by C21 attorney Joe Wylie. *See* Crabbe Dec., **Exhibit B**.

While the text messages obviously contain hearsay concerns, something clearly was said by someone to dissuade Mr. Storey from purchasing the Lead Generation System. The Trustee

---

[3] The Lead Generation Program has been also called the Pipeline System.

OBJECTION - 5

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

FG: 102563617.1
Case 23-10326-MLB    Doc 239    Filed 04/17/24    Ent. 04/17/24 15:15:00    Pg. 5 of 6

continues to investigate these very serious allegations.[4] As a result, until the Trustee obtains all the facts and circumstances for why Mr. Storey has terminated the purchase, whether it was at the insistence or as a consequence of statements made by C21 as Mr. Storey has represented to the Trustee, or for some other reason, the Court should not grant **any** relief requested by C21, including but not limited to the allowance of any claim, administrative or otherwise.

DATED this 17th day of April, 2024.

**FOSTER GARVEY P.C.**

*s/ Deborah A. Crabbe*

Deborah A. Crabbe, WSBA #22263
1111 Third Avenue, Suite 3000
Seattle, WA 98101
Telephone: (206) 447-5325
Email: deborah.crabbe@foster.com
Attorneys for Edmund J. Wood as trustee for
Asset Realty LLC

---

[4] C21 subsequently refuted Mr. Storey's assertions in a "warning" email to Trustee's counsel, asserted it did not understand what type of investigation the Trustee was contemplating and threatened potential repercussions under Fed. R. Bank. P. 9011. It is unclear what the basis for claims under Fed. R. Bankr. P. 9011 would be in as much as the Trustee has a duty under 11 U.S.C. § 704 to investigate the financial affairs of the Debtor and be accountable for all property received such as here, a purchase and sale agreement. Certainly, the sudden termination of a purchase and sale agreement that would have afforded the estate not less than $200,000 are circumstances affecting the financial affairs and assets of the Debtor warranting an investigation by the Trustee.

OBJECTION - 6

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

FG: 102563617.1
Case 23-10326-MLB    Doc 239    Filed 04/17/24    Ent. 04/17/24 15:15:00    Pg. 6 of 6